[S. F. No. 3151.   Department Two.—September 28, 1903.]

## In the Matter of the Estate of MICHAEL JAMES DONOVAN, Deceased. LIZZIE M. DONOVAN, Appellant, v. GERALDINE DONOVAN et al., Respondents.

ESTATES OF DECEASED PERSONS—CONTEST OF WILL—UNDUE INFLUENCE NOT SHOWN.— Upon the contest of a will in favor of the wife of the testator, on the alleged ground of undue influence of the wife over the testator, where it appears that the testator was a lawyer of sound mind and in the active management of his affairs, and that the will was holographic, and remained in his possession for three years from the date of its execution until his death, and there is no evidence that the wife was present when it was executed or requested its execution or knew of its existence until after her husband's death, no undue influence is shown.

ID.—GENERAL INFLUENCE OF WIFE.—The mere general influence of a wife over her husband, not shown to have been brought to bear directly upon the testamentary act, nor to have destroyed the free agency of the husband in the very act of making the will, is not

undue influence such as will afford ground for setting aside the will of a person of sound mind.

ID.—OPPORTUNITY AND INDUCEMENT—UNDUE INFLUENCE OF WIFE NOT PRESUMED.—It cannot be presumed, because the wife has ample opportunity and inducement to exert undue influence over her husband, that she has done so; but it must be shown that she has exerted her influence for an improper purpose. The fact that the will was in her favor, and that each of the children by the present wife, and a former wife, received only one dollar each, does not raise a presumption that undue influence was exercised by her over her husband.

ID.—FAIRNESS OF WILL—PROVINCE OF JURY—POWER OF TESTATOR.— The jury have no right, under the stimulus of their sympathy, to substitute their views of a fair will for that which, under the law, the testator had a right to make. A testator of full age and sound and disposing mind and memory, and not under restraint, may make such disposition of his property as does not conflict with the law; and the fact that he makes a foolish, unnatural, or unjust will does not show that undue influence caused the will.

ID.—DECLARATIONS OF HUSBAND—HEARSAY.—Where the soundness of the testator's mind was not in issue, the declarations of the testator, bearing upon the question of the influence of the wife over the husband, are inadmissible hearsay.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Lent & Humphrey, for Appellant.

There is no presumption nor proof that undue influence was exercised by the wife over the husband, under the facts appearing. (Chaplin on Wills, p. 95; Page on Wills, secs. 125, 132; *Estate of McDevitt,* 95 Cal. 33; *In re Langford,* 108 Cal. 623; *Estate of Kaufman,* 117 Cal. 288; *In re Wilson,* 117 Cal. 279; *Goodwin* v. *Goodwin,* 59 Cal. 560; *In re Nelson,* 132 Cal. 194; *Conley* v. *Nailor,* 118 U. S. 127; *Norton* v. *Paxton,* 110 Mo. 456; *In re Darst's Will,* 34 Or. 58; *Peery* v. *Peery,* 94 Tenn. 328; *Jackson* v. *Jackson,* 39 N. Y. 156; *Floyd* v. *Floyd,* 3 Strob. 44;[1] *Logan's Estate,* 195 Pa. St. 289; *Engelbert* v. *Engelbert,* 198 Pa. St. 327.[2]) The declarations of the testator were inadmissible. (*Estate of Gregory,* 133

[1] 49 Am. Dec. 630.                    [2] 82 Am. St. Rep. 808.

Cal. 137; *In re Calkins,* 112 Cal. 300; *In re Langford,* 108 Cal. 618; *In re McDevitt,* 95 Cal. 17; *In re Shell's Estate,* 28 Colo. 167.[1])

George H. Foulks, and Deal, Tauszky & Wells, for Respondents.

The evidence is sufficient to sustain the verdict. Circumstantial evidence is sufficient. (*Estate of McDevitt,* 95 Cal. 19-33; *Estate of Tibbetts,* 137 Cal. 123.) The declarations were admissible. (*Estate of Calkins,* 112 Cal. 296-300.)

HENSHAW, J.—This is a contest over the admission to probate of the will of Michael James Donovan, deceased. He died upon the twenty-seventh day of August, 1899, and at the time of his death was a resident of the city and county of San Francisco. He left surviving him his widow, Lizzie M. Donovan, appellant herein, and four minor children, fruits of this marriage. He also left Geraldine Donovan and Vincent Donovan, his children by a former marriage, who are adults, and who contested the probate of his will. Upon the trial of the contest but two issues were submitted to the jury—the issue of undue influence and the issue of fraud. The jury returned its verdict that the last will of the deceased was executed by him through the undue influence of Lizzie M. Donovan, his wife, but was not the result of any fraud practiced upon him. This appeal is from the order refusing the widow's motion for a new trial. The first attack that appellant makes is upon the sufficiency of the evidence to justify the verdict.

Deceased was about fifty-three years of age when the will was executed. No question is here involved of his soundness of mind, and it is a conceded fact that at the time of the execution of the will he was of sound mind. Deceased had been a business man, a man of affairs, had been in political life, was at one time a state senator, and was an attorney at law, duly licensed to practice before the courts of this state The will in question was holographic. By its terms he gave one dollar to each of his six children and the remainder of his estate to his widow. He lived for three years or more after

---
[1] 89 Am. St. Rep. 181.

the making of the will, and there is not the slightest evidence in the case to show that the widow directly influenced him in his testamentary act, or even knew of the will until after his death. Indeed, there is not the slightest evidence in the case from which in fairness it can be said that even inferentially the undue influence forbidden by law was ever exercised upon him.

It appears from the testimony of the contestants that after the second marriage of their father their lives became a veritable hell on earth. If their stories are to receive full credence, they were subjected to most undeserved and barbarous punishments. They were beaten daily for trifling and for no offenses. They were beaten upon the hands and feet until the blood flowed. They were bruised and maltreated. They were roused from sound sleep and beaten while in bed; and they were taken from bed and plunged into ice-cold water. This conduct was persisted in until they left the parental home, and this conduct upon the part of their father, they say, was all inspired by their stepmother. It appears also, however, without contradiction, that the same sort of punishment, having regard to their more tender years, was meted out to the offspring of the second marriage. All this was enough, and more than enough, to excite at once the sympathy and abhorrence of the jury, and it must be that it was under the influence of these emotions that their verdict was rendered, because beyond this there is nothing in the case to meet the requirements of the law as to evidence of undue influence. It is to be borne in mind that the testator was of sound mind and in the active management of his own affairs; that he was a lawyer, and drew the will himself; that the will remained in his possession for three years, from the date of its execution to the date of his death; that no evidence was offered to show that it was executed at a time other than upon the date it bore; that no claim was made that the appellant was present when the will was made, or that she ever at any time requested the decedent to make a will, or that she ever made a suggestion in reference to the making of a will, or that she even knew of the existence of the will until after her husband's death.

General influence not brought to bear upon the testamentary act, however controlling, is not undue influence such

as will afford ground for the setting aside of the will of a person of sound mind. (*Estate of McDevitt,* 95 Cal. 17; *Estate of Langford,* 108 Cal. 609; *Estate of Calkins,* 112 Cal. 296; *In re Wilson,* 117 Cal. 262.) Undue influence, however used, must, in order to avoid a will, destroy the free agency of the testator at the time and in the very act of the making of the testament. It must bear directly upon the testamentary act. (*Goodwin* v. *Goodwin,* 59 Cal. 560; *Engelbert* v. *Engelbert,* 198 Pa. St. 327;[1] Page on Wills, ed. 1901, secs. 127, 130; Chaplin on Wills, p. 95.) Says Chaplin: "The true test of undue influence is that it overcomes the will without convincing the judgment." It is apparent, therefore, that there is in this case an entire absence of evidence legally sufficient to show that the appellant here unduly influenced the mind of this testator in his testamentary act, and the conclusion seems irresistible that under the stimulus of their sympathy the jury substituted their views of a fair will for that which under the law the testator had the undoubted right to make. For, as has been said, "A testator of full age, sound and disposing mind and memory, and not under restraint, may make such disposition of his property as does not conflict with the law. The fact, then, that a testator with such qualifications makes a foolish, unnatural, or unjust will, does not show that undue influence caused the will." (Page on Wills, ed. 1901, sec. 132; *Estate of McDevitt,* 95 Cal. 33; *Estate of Kaufman,* 117 Cal. 289.[2])

The fact that the wife had and exercised an influence over the husband in the conduct of home affairs, or in the business of his life, is not itself evidence of undue influence; indeed, to the contrary, it is recognized as a natural and highly proper influence. Thus, in the early case of *Small* v. *Small,* 4 Greenl. 220,[3] the supreme court of Maine, reversing a verdict refusing probate to a will, says: "If a wife by her virtues had gained such an ascendancy over her husband, and so riveted his affections that her good pleasure is a law to him, such an influence can never be a reason for impeaching a will made in her favor, even to the exclusion of the residue of his family; nor would it be safe to set aside a will on the ground of influence, importunity, or undue advantage taken of the

---

[1] 82 Am. St. Rep. 807.          [3] 16 Am. Dec. 255.

[2] 59 Am. St. Rep. 179.

testator by his wife, though it should be proven she possessed a powerful influence over his mind and conduct in the general concerns of life, unless there should be proof that such influence was specially exerted to procure a will of such a kind as to be peculiarly acceptable to her, and to the prejudice and disappointment of others. . . . The law requires proofs of facts, especially where the object is to destroy and set aside an act apparently deliberate and executed with all usual and legal formalities."

And thus again in *Peery* v. *Peery,* 94 Tenn. 328, the court say: "It cannot be presumed, because the wife has ample opportunity and inducement to exert such influence, that she has done so, but it must be shown that she has exerted such influence for an improper purpose. The fact that a wife has a great influence over her husband in the ordinary affairs of life, and exercised control over his home and domestic concerns, raises no presumption against her in the matter of his will. All of these things are perfectly consistent with wifely duty and privilege, and the legitimate result of that influence which love and affection should exert. . . . It is true undue influence may be proven by circumstantial evidence, but still it must go to the extent of showing that the testator was dominated beyond his control and deprived of his free agency. It is also true that a wife has ample opportunities to exert her influence secretly upon her husband, but it cannot be presumed, in the absence of any proof, that it was unduly exercised to constrain him to do that which he otherwise would not do. It should be borne in mind also that a testator, when he lives for any length of time after making his will has ample opportunity to change his will, if he so desire, or make another, and this without the knowledge of the wife or other interested party."

In *In re Langford,* 108 Cal. 608, the language of the supreme court of Michigan, in *Latham* v. *Udell,* 38 Mich. 238, is quoted with approval to the following effect: "There is no legal presumption against the validity of any provision which a husband may make in a wife's favor, for she may justly influence the making of her husband's will for her own benefit or that of others so long as she does not act fraudulently, or extort benefits from her husband when he is not in condition to exercise his faculties as a free agent."

Evidence of certain declarations by the testator was admitted over objection of appellant. To illustrate: A witness testified to conversations with testator, in Sacramento, in June, 1896, to the effect that a reconciliation had taken place between his son Vincent and himself, and that testator had said that his wife was his boss, and that it was her fault that he had quarreled with his son, and that she had an influence over him, and that he would jump into the bay if she told him to. Another declaration was to the effect that he intended to turn his paint business over to his son, and still again that he had not forgotten his promise to his dead wife to look after their children. One and all, these declarations were erroneously admitted, not because of their remoteness in time, but, because the soundness of the testator's mind not being in question, they were inadmissible hearsay. Thus, in *Estate of Calkins,* 112 Cal. 302, it is said: " 'Whenever the mental feelings of an individual are material to be proved, the usual expressions of such feelings made at the time in question are original evidence.' (1 Greenleaf on Evidence, sec. 102.) This subject and the cases bearing upon it received an exhaustive examination in *Waterman* v. *Whitney,* 11 N. Y. 157,[1] and the rule there laid down is, that where a will is disputed on the ground of fraud, duress, imposition, or other like causes, not drawing into question the testator's mental capacity at the time of its execution, neither his prior nor subsequent declarations are competent evidence."

"The court should not have permitted evidence to go to the jury of any declarations of the testatrix regarding the statements or acts of those by whose influence it is alleged that she was induced to make the will." (See, also, *Estate of Gregory,* 133 Cal. 137.)

We have here been considering the appeal from the order of the court denying appellant's motion for a new trial. As that order must be reversed, it becomes immaterial to pass upon respondent's motion to dismiss the appeals from the judgment.

The order refusing appellant a new trial is reversed and the cause remanded.

McFarland, J., and Lorigan, J., concurred.

---

[1] 62 Am. Dec. 71.